# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        No. CR 06-1646 JB

FRANCISCO TRINIDAD-TOLEDO,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Sentencing Memorandum for Defendant Francisco Trinidad-Toledo, filed December 6, 2006 (Doc. 16)("Sentencing Memo I"); and (ii) the Supplemental Sentencing Memorandum for Defendant Francisco Trinidad-Toledo, filed December 26, 2006 (Doc. 19)("Sentencing Memo II").  The Court held a sentencing hearing on January 11, 2007.  The primary issues are: (i) whether the Court should depart downward under U.S.S.G. § 5H1.6, because of Trinidad-Toledo's wife's disability and lack of financial support; and (ii) whether the Court should deviate from the advisory Guidelines' sentence for those reasons.  While the Court acknowledges the hardship that incarceration will place upon Trinidad-Toledo's family, the Court cannot say that the hardship is out of the heartland of cases that this Court, this district, or that federal courts throughout the nation, see, or that the hardship warrants a departure or deviation.  Thus, for reasons stated at the sentencing hearing, and for reasons consistent with those already stated on the record, the Court denies Trinidad-Toledo's request for a downward departure and/or deviation from the Guidelines' sentence.

## FACTUAL BACKGROUND

Trinidad-Toledo represents that he is the sole source of income and support for his disabled wife, Rosa Citalin-Cruz, and his eight-year old daughter, Rosita. See Sentencing Memo I at 3-4. Trinidad-Toledo submits that, in Mexico, he works as a farm worker, picking melons and lemons, and cleaning out fields, and that he will generally earn the equivalent of six dollars for a work day that lasts from 6:00 a.m. until 2:00 p.m. See id. at 4. Trinidad-Toledo states that he works from field to field based on job availability. See id.

Trinidad-Toledo informs the Court that Rosa and Rosita live in Chahuites, Oaxaca, Mexico, a small rural community in the southwestern part of Mexico. See id. at 3. Rosa is forty-nine and suffers from diabetes mellitus type II, arterial hypertension, initial findings of kidney failure, and hypercholesterolemia. See Sentencing Memo I, Exhibit A, Medical Certificate (dated July 10, 2006)("Medical Certificate").

Trinidad-Toledo represents that Rosa receives some medical support from the local clinic in Chahuites when the funds or medications are available. See Sentencing Memo I at 3. Trinidad-Toledo submits that, as a result of an infection in her foot that the diabetes has caused, she has lost the use of one of her feet, which impedes her ability to walk. See id. Trinidad-Toledo asserts that Rosa's foot problem has also impeded her ability to work. See id.

Trinidad-Toledo represents that, in Mexico, the existence of governmental social programs is very minimal and incapable of providing support to maintain his family. See id. Trinidad-Toledo submits that, because his wife is unable to work, and with the minimal social programs available in Mexico, his family relies on him for monetary support. See id. Trinidad-Toledo states that, during the school year, Rosita receives a scholarship to attend school and occasionally receives a food

-2-

basket, but that these food baskets are infrequent and not enough to support the family.  See id.

Trinidad-Toledo represents that his extended family, including his siblings and grown children, are scattered throughout Mexico, and are not in position to provide any support for Rosa or Rosita.  See id. at 2.  Trinidad-Toledo submits that the extreme economic conditions that abound in Mexico preclude Trinidad-Toledo's family from providing the much needed support.  See id. at 2-3.

Trinidad-Toledo informs the Court that his father has passed away, and that even though his mother, Maria Lubia Trinidad-Aguilar, resides in the same area as Rosa and Rosita, his mother's only employment is washing clothes whenever she can find such work.  See id. at 3.  Trinidad-Toledo represents that, as a result, his mother can barely take care of herself, much less a significantly disabled daughter-in-law and an eight-year old granddaughter.  See id.  Trinidad-Toledo asserts that he was required, to the extent he was able, to provide additional support for his mother while he was living and working in Mexico.  See id.

Based on the foregoing assertions, Trinidad-Toledo contends that his presence in the home is necessary to provide the needed support for his disabled wife and daughter.  See id. at 4-5.

## PROCEDURAL BACKGROUND

In his Plea Agreement, Trinidad-Toledo pled guilty to illegal re-entry following deportation for an aggravated felony.  See Non Fast Track Plea Agreement at 2, filed August 25, 2006 (Doc. 13). On October 17, 2006, the United States Probation Office for the District of New Mexico ("USPO") disclosed the Pre-sentence Report ("PSR") for Trinidad-Toledo.  See PSR at 1, disclosed October 17, 2006.  Neither the United States nor Trinidad-Toledo has submitted any objections to the PSR. Instead, on December 6, 2006, Trinidad-Toledo submitted to the Court, and filed, a sentencing

memorandum, requesting that the Court take into consideration the information contained therein and incorporating a request for a downward departure for his sentence based on U.S.S.G. § 5H1.6, the provision that authorizes a sentencing court to consider a defendant's family ties and responsibilities. See Sentencing Memo I at 1.  The USPO then released to the parties, and submitted to the Court, an Addendum to the PSR on December 11, 2006, stating that, although Trinidad-Toledo has provided a medical certificate regarding his wife's medical condition, a single letter outlining a family member's medical condition in itself is not ordinarily sufficient to warrant a downward departure. See Addendum to the PSR at 1-2, dated December 11, 2006.  Moreover, the medical certificate does not provide a telephone number that would allow the USPO an opportunity to verify the medical information.  See Medical Certificate; Addendum at 1.  Furthermore, during the PSR interview, Trinidad-Toledo provided a telephone number for verification of information, but that was incorrect and no one could be reached.  See Addendum at 1.

The Probation officer therefore could not verify any information regarding Trinidad-Toledo's family and marital history.  See id.  Based on the information that it had, the USPO concluded that there was insufficient information on the record to warrant a downward departure pursuant to U.S.S.G. § 5H1.6.  See Addendum at 1-2.  The USPO stated that, should Trinidad-Toledo's counsel provide additional contact information, that information would help to address adequately the departure request.  See id. at 2.

The Court, upon an unopposed motion filed on Trinidad-Toledo's behalf, see Unopposed Motion to Vacate Sentencing Hearing, filed December 12, 2006 (Doc. 17), vacated the sentencing hearing that the Court had previously scheduled for December 14, 2006, and rescheduled the hearing for January 11, 2007, see Order, filed December 14, 2006 (Doc. 18), to allow Trinidad-Toledo time

to provide further contact information for his wife's treating physician.  On December 26, 2006, Trinidad-Toledo submitted a supplemental sentencing memorandum, containing additional information regarding Rosa.  See Sentencing Memo II.  Taking up the USPO's statement that further contact information would assist in the determination of the validity of the request for downward departure, the supplemental sentencing memorandum provided telephone numbers for Trinidad-Toledo's wife's physicians.  See id. at 2.

In his supplemental sentencing memorandum, Trinidad-Toledo represents that he contacted the treating physician, Dr. Ernesto Gonzales-Coutino (cell telephone number 011-521-994-263-9539) and the director of the local clinic, Dr. Marco Antonio Martinez (cell telephone number 011-521-951-157-4570) to confirm Rosa's condition.  See id.  Trinidad-Toledo reports to the Court that Dr. Martinez stated that he would be on vacation from December 21, 2006, through January 4, 2006, but would be available for confirmation of the information after that date.  See id.  Trinidad-Toledo provided this contact information to the USPO in an effort to justify further his request that the Court provide a downward departure based on his family ties and responsibilities.  See Second Addendum to the PSR ("Second Addendum").  Trinidad-Toledo maintained that, once the USPO verified his wife's health needs, the Court would be placed in a position to evaluate properly and apply sentencing guideline § 5H1.6.  See Sentencing Memo II at 2.

In its Second Addendum to the PSR, the USPO stated that, on January 5, 2007, its officer attempted to contact Dr. Martinez; however, no one could be reached at the provided number.  See Second Addendum at 1.  On the same date, the officer contacted Dr. Gonzales-Coutino, who provided information regarding Rosa.  See id. at 1-2.  Dr. Gonzales-Coutino reported that he first met Rosa at a local public health clinic in Chahuites in 2006.  See id. at 1.  He could not recall the

-5-

actual date when he met Rosa, but remembered her attending the public clinic. See id. Dr. Gonzales-Coutino eventually left the public health clinic and currently operates his own clinic in Chahuites. See id.

When asked if he continues to provide medical treatment for Rosa, Dr. Gonzales-Coutino said he provides treatment, but indicated that, at this time, he does not charge for his services. See id. at 1-2. Dr. Gonzales-Coutino explained that he is aware of Rosa's economic difficulties and, as a result, provides treatment on a humanitarian basis. See id. at 2. He explained that Rosa's medical condition is not life threatening so long as she maintains a proper diet and takes her medication. See id.

Dr. Gonzales-Coutino reported that he last treated Rosa about one month ago. See id. When asked how Rosa obtains her medication, Dr. Gonzales-Coutino reported that he did not know. See id. He did convey that, while working at the public health clinic, he would provide Rosa with the medication. See id. Dr. Gonzales-Coutino reported that Rosa's foot infection has been taken care of and that she no longer suffers from that infection. See id.

## ANALYSIS

Neither the United States nor Trinidad-Toledo has submitted any objections to the PSR. Accordingly, Trinidad-Toledo is not arguing that the Guidelines' sentence is calculated incorrectly, but that the Court should depart from the Guidelines' sentence or deviate from it. While the Court recognizes the hardship incarceration will cause to Trinidad-Toledo's family, the Court is not convinced Trinidad-Toledo's case is outside the heartland of cases this Court and other federal courts see on a daily basis, and the Court does not believe that either a departure or deviation is warranted.

## I.   DOWNWARD DEPARTURE PURSUANT TO UNITED STATES SENTENCING GUIDELINES.

The United States Court of Appeals for the Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  Under U.S.S.G. § 5H1.6, however, the court may make appropriate adjustments if the defendant's family ties and responsibilities present an extreme circumstance that sets the defendant apart from others.  See United States v. Gauvin, 173 F.3d 798, 807 (10th Cir. 1999)("[A] district court may depart based on family circumstances 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'")(quoting Koon v. United States, 518 U.S. 81, 96 (1996)).

The Sentencing Guidelines make it clear that "family ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6.  Application Note 1(B)(i) to U.S.S.G. § 5H1.6 indicates the Court should consider if the defendant's service of a sentence within the applicable Guidelines' range may cause a substantial, direct, and specific loss of essential care taking, or essential financial support, to the defendant's family.  See  U.S.S.G. § 5H1.6, app. n.1(B)(i).

In most cases, where defendants request a departure based on family ties, the courts have found that the circumstances involved are not of a nature that places them outside the heartland of similarly situated defendants.  See United States v. Sweeting, 213 F.3d 95, 107 (3d Cir. 2000); United States v. Archuleta, 128 F.3d 1446, 1450-52  (10th Cir. 1997); United States v. Allen, 87 F.3d 1224, 1225-26 & n.1 (11th Cir. 1996).  An examination of the cases denying the departure reveals that a

primary consideration is the extent the individual is needed in the home.  See United States v. Sweeting, 213 F.3d at 107-08.  That determination hinges on the available safety nets that may be available to the defendant, such as other members of the family being able to step in to provide support, or government programs that may be available to the family in the absence of the defendant. See id.; United States v. Allen, 87 F.3d at 1225-26 & n.2.

Because Trinidad-Toledo alleges that his family will face an extreme burden as a result of an extended period of incarceration, the Court will consider his family ties.  Nevertheless, despite the economic and social conditions present in Trinidad-Toledo's case, and despite his wife's alleged disability, the Court does not believe that his family ties are present to an exceptional degree.  Dr. Gonzales-Cruz verified that Rosa is receiving treatment for a manageable disease.  See Second Addendum at 1-2.  In 2001, Trinidad-Toledo was incarcerated for four years, and his wife still maintained the family structure.  See id. at 2.  The Court believes that Trinidad-Toledo's case is not outside the heartland of cases of similarly situated defendants.  The Court therefore concludes that a departure is not warranted under U.S.S.G. § 5H1.6.  The Court does not find the issues warrant a departure under the Guidelines.  Moreover, even if a departure were warranted, the Court would exercise its discretion not to depart downward, because of the serious crime of violence for which Trinidad-Toledo was convicted in state court.

## II.   SENTENCING BASED ON 18 U.S.C. § 3553(a).

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States held that while a district court must consider Guidelines' ranges, the court should "tailor the sentence in light of other sentencing concerns as well."  Id. at 245-26.  In United States v. Sanchez-Juarez, 446 F.3d 1109 (10th Cir. 2006), the Tenth Circuit found that, "in addition to guiding our

reasonableness review on appeal, the sentencing factors set forth in 18 U.S.C. § 3553(a) must be considered by the district court itself when imposing a sentence. . . .  Indeed, after <u>Booker</u>, these factors 'have a new vitality in channeling the exercise of sentencing discretion.'" <u>Id.</u> at 1115 (quoting <u>United States v. Trujillo-Terrazas</u>, 405 F.3d 814, 819 (10th Cir. 2005)(internal citation omitted)).

In a recent unpublished opinion, the Tenth Circuit stated that § 3553(a) included as sentencing factors:

> [T]he nature of the offense of conviction, the characteristics of the defendant, the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide any needed treatment for the defendant, as well as the need to avoid unwarranted disparities among similarly situated defendants committing similar crimes.

<u>United States v. Gomez-Castillo</u>, No. 05-4139, 2006 U.S. App. LEXIS 11277, at *10-11 (10th Cir. May 3, 2006).   The court must consider these factors and apply them when determining an appropriate sentence for a defendant.  <u>See id.</u> at 7-10.  Pursuant to 18 U.S.C. § 3553(a)(1)-(7), the Court has great discretion to fashion a sentence that is sufficient but not greater than necessary.

Trinidad-Toledo purports to recognize the seriousness of the offense for which the Court is sentencing him, <u>see</u> Sentencing Memo I at 5, but maintains that it is not a crime of violence, <u>see</u> PSR, and the result at the end of any sentence will be his deportation to Mexico.  Trinidad-Toledo feels he was driven to take the risks associated with returning to the United States in an effort to improve the life of his wife and daughter.  <u>See id.</u>  He now represents that he realizes that the potential benefits involved were not worth the lost time he has spent not being able to provide for his family while incarcerated.  <u>See id.</u>  Trinidad-Toledo asserts that his current incarceration has driven home to him and his family the grave consequences of returning to the United States.  <u>See id.</u>  Trinidad-Toledo submits that he now has a greater understanding for the seriousness of the re-entry offense and has

determined that he cannot accept the risk of returning to the United States again.  <u>See</u> <u>id.</u>

The Court recognizes that, pursuant to 18 U.S.C. § 3553(a)(1)-(7), it has discretion to fashion a sentence that is sufficient but not greater than necessary.  While incarceration will impose a hardship on Trinidad-Toledo's ill wife and young daughter, regrettably, the Court sees this hardship in almost every case where the defendant has a family.  The Court does not see the circumstances here as extraordinary or unusual, even though plainly unfortunate.  To deviate for this one defendant would create a disparity in sentencing among similarly situated defendants.  The Court believes that the Guidelines' sentencing range is reasonable here and thus will not exercise its discretion to deviate from that range.

**IT IS ORDERED** that the Defendant's request that the Court consider the factors in U.S.S.G. § 5H1.6 and 18 U.S.C. § 3553(a) is granted, but that the request for substantial departure and/or deviation, from the Guidelines' sentencing range of 41-57 months to an incarceration period of 24-30 months, is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Rhonda Backinoff
   Assistant United States Attorney
United States Department of Justice
Albuquerque, New Mexico

   *Attorney for the Plaintiff*

Jerry A. Walz
Walz and Associates
Cedar Crest, New Mexico

   *Attorney for the Defendant*